IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THADDEUS R.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 24 C 4395 |
| v. ) | |
| ) | Magistrate Judge |
| MICHELLE KING, Acting ) | Daniel P. McLaughlin |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Thaddeus R.'s claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse the Commissioner's decision [15] is denied, and the Commissioner's cross-motion for summary judgment [20] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Michelle King has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

### I. PROCEDURAL HISTORY

On September 16, 2021 and September 17, 2021, respectively, Plaintiff filed claims for DIB and SSI, alleging disability since June 9, 2021. The claims were denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held an online video hearing on June 13, 2023. Plaintiff appeared and testified at the hearing via video and was represented by counsel. A vocational expert ("VE") also testified via telephone.

On July 7, 2023, the ALJ denied Plaintiff's claims for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claims were analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 9, 2021. At step two, the ALJ concluded that Plaintiff had severe impairments of rectal cancer and

obesity. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; and can frequently kneel, crouch, crawl, or stoop. At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a caregiver. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.     JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and

4

means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024) (citations omitted). All that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Id.* at 1054 (citations and internal quotations omitted). Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

5

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's assessment of Plaintiff's fatigue was deficient; and (2) the ALJ failed to adequately explore Plaintiff's mental impairments. Each argument will be addressed below in turn.

#### A. <u>Plaintiff's Alleged Fatigue</u>

For his first argument, Plaintiff contends that "[t]he ALJ failed to account for Plaintiff's symptom of fatigue." ([15] at 5-9.) However, the ALJ did consider Plaintiff's fatigue throughout her decision. The ALJ noted Plaintiff's allegations that treatment for his rectal cancer caused significant fatigue and "his fatigue is so severe, that even after sleeping ten to eleven hours most nights, he needs to take three to five naps per day." (R. 91.) The ALJ further noted that while Plaintiff "reported generally feeling well during his initial chemotherapy," he "reported intermittent fatigue and nausea during the second course of chemotherapy, but nothing extreme." (*Id.* at 92.) In discounting Plaintiff's fatigue symptoms, the ALJ reasoned that Plaintiff's "medical records paint the overall picture of an individual who has tolerated his chemotherapy and radiation therapy fairly well." (*Id.* at 93.) The ALJ further reasoned that "the records document persistent complaints of fatigue, but not the need for three to five half-hour naps per day." (*Id.*) With respect to her RFC assessment, the ALJ then explained that "the reported fatigue and neuropathy that has come from the chemotherapy and radiation treatments . . .

6

warrant the restriction to light exertion as well as the additional postural limitations." (*Id.* at 94.)

Given the ALJ's explicit analysis concerning Plaintiff's fatigue, the Court finds that the ALJ adequately considered and accounted for Plaintiff's alleged fatigue symptoms. *See Michele M. v. Kijakazi*, No. 20 CV 7749, 2023 WL 3479182, at *3 (N.D. Ill. May 16, 2023) ("This is not a case in which the ALJ failed to grapple with the evidence. Instead, she considered and weighed the evidence and assessed an RFC supported by substantial evidence. The court therefore finds that the ALJ sufficiently evaluated Michele's chronic fatigue, edema, and OCD and adequately accounted for them in the RFC analysis."); *Georgia K. v. O'Malley*, No. 23-CV-02179, 2025 WL 240974, at *4 (N.D. Ill. Jan. 17, 2025) ("The Court is thus satisfied that the ALJ considered Plaintiff's fatigue in her assessment of Plaintiff's associated work-related limitations. No remand is necessary on this basis."). The Court must decline Plaintiff's invitation to reweigh the evidence in relation to his fatigue symptoms. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Plaintiff contends that the ALJ's light work limitation in the RFC did not adequately accommodate his fatigue. ([15] at 5, 8.) However, as Defendant points out, courts in the Seventh Circuit have recognized a connection between fatigue and exertional level. *See, e.g.*, *Anderson v. Colvin*, 213 F. Supp. 3d 1104, 1111 (E.D. Wis. 2016) (holding that fatigue potentially limited plaintiff to light work). Furthermore, courts have found that a limitation to light work may accommodate fatigue symptoms. *See Georgia K.*, 2025 WL 240974 at *4 (affirming ALJ's decision:

7

"Specifically, in addressing Plaintiff's fatigue, the ALJ found that the record did support that there were physical and mental limitations associated with Plaintiff's fatigue, and thus reduced Plaintiff's RFC to demands of light work activity, and simple routine tasks. However, the ALJ did not find that Plaintiff's fatigue resulted in work-preclusive limitations."); *Michele M.*, 2023 WL 3479182 at *3 ("In short, the ALJ considered the numerous references to Michele's fatigue in the medical record and testimony and accounted for her 'complaints of pain and fatigue' by limiting her to light work with exertional and non-exertional limitations.").

Plaintiff argues more generally that the ALJ erroneously rejected his allegations concerning fatigue. ([15] at 9.) This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Under that standard, the Court finds that, per the ALJ's explanation and support set forth above, the ALJ reasonably determined that Plaintiff's alleged fatigue symptoms were not as extreme as alleged. *See Ellen W. v. Kijakazi*, No. 19 C 03866, 2022 WL 345076, at *6 (N.D. Ill. Feb. 4, 2022) ("[T]he ALJ provided sufficient reasons to discount Plaintiff's testimony with respect to her fatigue and need for extra breaks."); *Prill v. Kijakazi*, No. 21-1381, 2022 U.S. App. LEXIS 1072, at *23 (7th Cir. Jan. 13, 2022) ("Substantial evidence supports the ALJ's determination that Prill's account of her subjective symptoms was not consistent with her medical

8

records."); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). Plaintiff has not shown that the ALJ's evaluation of his fatigue symptoms was "patently wrong," as was Plaintiff's burden. *See Horr v. Berryhill*, 743 F. App'x 16, 19–20 (7th Cir. 2018).

### B. Plaintiff's Mental Health Records

For his second argument, Plaintiff contends that the ALJ erred by not seeking additional records concerning his "depression, cognitive issues, and Tourette's syndrome." ([15] at 9-10.) Pertinent to that assertion, the ALJ determined that Plaintiff's Tourette's syndrome was not a medically determinable impairment because there was "no record of any diagnosis or treatment for this in the medical records." (R. 90.) The ALJ also noted Plaintiff's testimony that he was currently treating his depression with medication and counseling, but stated that there was "no documentation of any such treatment" and "the claimant's depression screenings have resulted in scores from 0-4, far below any worrisome threshold." (*Id.*) Pointing to the absence of evidence concerning his alleged mental impairments, Plaintiff contends that the ALJ erroneously "failed to inquire further about [Plaintiff's mental health] treatment." ([15] at 9-10.)

However, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citations omitted). Thus, here, it was

9

Plaintiff's burden to produce records regarding his alleged mental impairments. In advancing his argument, Plaintiff "improperly seeks to shift the burden of gathering proof of [his] impairment to the Commissioner." *Charmaine R. v. Saul*, No. 18 C 7955, 2021 WL 83737, at *5 (N.D. Ill. Jan. 11, 2021). Indeed, Plaintiff admits that he was represented by counsel and asserts that references to Plaintiff's mental impairments "should have instigated some kind of action on the part of Plaintiff's representative at the hearing." ([15] at 10.) Assuming that is true, Plaintiff cannot now fault the Commissioner for any inaction on his attorney's part. Lastly, the Court notes that Plaintiff has abandoned any arguments concerning his mental health records in his reply brief. For these reasons, the Court finds Plaintiff's second argument unavailing.

## CONCLUSION

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse the Commissioner's decision [15] is denied, and the Commissioner's cross-motion for summary judgment [20] is granted.

**SO ORDERED.**          **ENTERED:**

**DATE:**    **February 5, 2025**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**